Ms. Rodgers. Good morning, my name is William Huey. Along with my co-counsel, Ms. Diane Hill, we represent the appellant in this matter, Ms. Kourtney Rodgers, a former nursing student at Gramland State University. I think the courts probably looked at the factual context of this case as an antitrust action that we filed predicated on the fact that the Gramland program was closed solely based on the use of the NCLEX exam, which is a national licensing exam, and a theory that you can determine the quality of a program based on the passes rate of first-time takers, not anything else. Or in essence, you could close a law school based on the passes rate of individuals on the bar exam. On the passing rate. On because you can take it four times. And it's predicated on a theory of safety. There's nothing empirical that would establish the fact that a first-time passer of that exam. But that, we don't need to get into that, do we? Because we're here on a jurisdiction question. And the jurisdiction question, Your Honor, is basic. It's whether or not the board is immune from us pursuing this matter. And it's our theory, based on the ruling in North Carolina Dillon, which is a 19, 2015 ruling by the United States Supreme Court, that they're not immune. And they're not immune based on the fact that they're considered to be non-sovereign entities. And basically what the court has done at the lower level is, is that they used a straight argument using an 11th Amendment rule based on the fact that it's a state agency. And PARCA pretty much stands for the fact that if indeed it is a state agency, a sovereign state agency, they are immune from antitrust action. But if the actors that are in control of the particular entity are considered to be non-sovereign actors who are actively involved in the area that they are regulating, that they're required. What was the error of the district court? Tell me succinctly as you can what the error of the district court. I mean, the Gramland has been closed because the state board, which there's no question, is a state agency and is entitled to 11th Amendment immunity. Do you question that? I question that because an error that the lower court basically did in this particular case is, is that it used the wrong test. The Mid-Cal test. Well, I didn't understand from your, from your brief, I thought you were not challenging the right of the, or the fact that the board closed the nursing school was subject to the application of the 11th Amendment, but that the district court did not properly apply the 11th Amendment. And your honor, and that proper application is, is that the test... Am I right about that? Well, I think the court is right in reference to the point that the test that we're saying that should have been utilized was the two-pronged test that's required, that's been required by the Supreme Court in the Mid-Cal case. Well, so just to simplify the terms, we're talking about 11th Amendment immunity and this state action immunity under the antitrust law. Right. Am I correct about that? Correct. But yet, as Judge Jolly says in your brief here, you only seem to be arguing about 11th Amendment immunity and you don't seem to be urging this state action immunity under antitrust law. Your honor, I'm arguing in the brief, it makes reference that there should have been a two-pronged test. The two-pronged test would have been the test that would have basically been outlined in North Carolina Dental and the test that's outlined in Mid-Cal. Your argument is that both with respect to the 11th Amendment immunity, sovereign immunity, and with respect to state action immunity, which is judicially created, the same test should be applied to each one to determine whether they were barred, whether the jurisdiction of your claim is barred. Your honor, no, I'm not saying that. What I'm saying is, is that based on the fact that the nursing board is considered to be a non-sovereign actor. Yeah, what? A non-sovereign actor. In other words, the board is composed of individuals that are literally individuals involved in the marketplace. In other words, they're nurses, they're regulating the area that they're actually actively involved in. And what the law is in that area is that when you're dealing with an entity composed of these non-sovereign actors, the test is the two-pronged test that's detailed in Mid-Cal and pretty much just expanded on in North Carolina Dental. Well, let me ask it this way then. Do you agree that if, if the, if we held the board is equivalent to the state of Louisiana and protected by the Eleventh Amendment, is the case over? No, because the test for these individuals when they fall into this non-sovereign actors is the two-pronged test in Mid-Cal and expanded on. But I'm asking you to assume they are sovereign actors. If we hold they are sovereign actors, it is the state of Louisiana. If we held that, then we wouldn't even look to state action under antitrust, would we? Yes, you would. Matter of fact, that's what the Earl Court did. Because in the Earl's Court situation, the Mid-Cal test was conducted by the board, would not have immunity based on the fact that they fell into the category of being a non-sovereign actor. You know what's really amazing about this, this particular point in time, is that currently in this Fifth Circuit and cause number 16-50017, Teladoc versus the Texas Board of Medicine, that case is currently, right now, based on the issue that the Austin District Court held that the Texas Medical Board does not have immunity based on the fact that they are non-sovereign actors and that they are subject to the two-pronged test that's been outlined in Mid-Cal and also that's addressed in North Carolina Dillon. Well, Mr. Huey, it seems to me, I'm not familiar with that case, but it seems to me if, what I'm thinking of is a problem for you, is the Goldfarb versus Virginia State Board of Bar Examiners or whatever it was from 1975, which went through what you're talking about, state action immunity, and then said the district won't find that we still find unaddressed that the 11th Amendment might bar this suit, so we send it back for them. So that may be the only example, but at least in that case, the Supreme Court seemed to recognize that there are two separate immunities, both equally subject to evaluation in a case, and the case you just described is pending with us. It sounds to me like you're saying the court found no sovereign immunity, but then turned to the state action immunity, which I'm just going by your articulation a moment ago. What is there that tells us that only state action immunity would apply in your case and not sovereign immunity? The fact that North Carolina Board of Dental Examiners dealt with state action immunity, there's nothing in it that says when that applies or doesn't apply, when that is relevant, you ignore sovereign immunity, is there? I mean, is there anything in that case that says you ignore sovereign immunity, 11th Amendment, when you're discussing state action immunity? I think what the line of reasoning has been, coming forward from Brown, which basically said the state is immune from antitrust actions, and then moving forward to the MidCal case, where the court said, well, when you basically delegate a function to another individual, quote unquote, this non-sovereign individual, who's also an individual who's active in the marketplace that's being regulated, then these individuals are subject to some form of supervision in their action. So I think that the case law is clear that if it was just strictly a state agency with regular state agency employees, we're not talking about a medical board with doctors, a bar board with attorneys. Mr. Healy, you have a red light on, but you've saved some time for rebuttal. Okay. All right. Thank you. So we'll hear from Ms. Hill now, also representing the plaintiff in the case, Ms. Rodgers. May it please the court, I'm Diane Hill, counsel for Courtney Rodgers. A good part of the argument that you just heard is not in the record, and that's why we're here to complain. We're concerned about the manner in which it was removed. Essentially, you're aware that we had, we wanted time constraints to file responses within 10 days, because the plaintiff had requested a temporary restraining order. So that brought in the time constraints. Then to accommodate us, the court gave us, gave the defendants 10 days to respond, and our, we had 10 days to file after their filing. We're talking about the district court rejecting your brief. Rejecting our brief, yes, your honor. Because it was untimely. Yes. Okay. And my argument, first of all, is that it was not untimely. The defendants submitted a brief that was not filed by the clerk. Instead, they got a notice saying you have exceeded page numbers. Yeah, but the district court, didn't the district court go ahead and even though it denied your brief, rejected your brief. Yes. The district court himself did the research. How were you prejudiced? What did you say in that brief that might have changed his mind that he didn't research on his own? Your honor, the court opinion and the defendant's brief ignored our argument concerning the two-pronged test. Does the district court, I didn't do a search function, but I didn't see it, ever mention state action immunity in the case at all. And none of its progeny. Nothing at all is mentioned. And that was, you know, it really got complicated because we had a temporary restraining order out there trying to get the girl back in school for the fall semester. And we had these time constraints and we were expecting an opposition to the TRO so that we could get to hearing. The defendants filed a 12B6. Well, that put us into a mode where we're trying to defend the dismissal now on a jurisdictional basis. And I think the focus got changed because at this point the court doesn't rule until the end of October, which by that time is getting to be pretty long to be getting somebody back in school to make our TRO essentially move. Were you trying, your TRO was forcing the school to remain open, to remain, to keep the nursing program open for at least one more year until we could get the legal status determined? Because part of our claim is that there was a teach-out, there should have been some kind of teach-out program. You just don't shut it down with people getting ready to graduate and about to lose credits if they have to change schools, which is essentially what my, our woman was a merit scholar and ended up having to find some place to scramble to get to school so that she could finish, she's still going to finish a year late, because she's losing credits. So we're trying to say use a teach-out program, which is part of the protocol, but we never get to that point because we're dealing with the dismissal of the jurisdiction. And I think somewhere in there, we just lost sight of that TRO that's standing there, that we were hoping for a quick resolution. I believe we checked the record to see if your brief that was dismissed, if you made it part of the record, and I don't believe you did. We couldn't find it in the record. I know generally briefs are not part of the record, but here where he struck your brief, I thought, well, perhaps you filed and made it part of the record so we could look at your brief to see whether there had been prejudice. And I don't believe you filed your brief in the record, did you? We did not refile it. So we have no way of knowing what you did or did not say. So, and that's why we're complaining that that was an unwarranted sanction. Counsel, your basic point is that your brief, with whatever infirmities the district court made improperly or improperly found, would have argued what your fellow counsel just finished arguing, would have argued the state action immunity, and instead the district judge went off on sovereign immunity. Is that the basic prejudice that you're talking about? Well, also, he didn't just deny it, he put disparaging remarks on the record about counsel failing to... It's like intentionally disregarding the rules of the court. And if you're going to make those kind of personal conclusions, it seems that they should have followed their own local rule that required notice and opportunity to be heard. The strike in the brief was very serious, because that's what we do to get our voice before the court. There's no oral argument, so we're... How late was your brief? The brief was not late, Your Honor. That's my point. How late did the court say it was? They did. The defendants filed their conformed brief. The original date was, I think it was October... I'm sorry, they were three days late, because they filed the original brief timely, and the clerk refused to file it. Sent a note saying, you've got excess pages, you need to do a motion to strike, and then... And a motion to exceed. A motion to exceed. When we got the court order to file the conformed brief, it was three days later. And we filed our opposition ten days after that, in conformance with the court ruling. Now, the court telephone conference says, you can file your return ten days after the filing of the opponents, which is what we did. So it was ten days after that. So it was really technically not late. Now, we did exceed pages. I mean, I can't say we... That part is quite true, but we... You did have excess pages. We did have excess pages. We had a number of excess pages. But there are other ways to deal with that, rather than just striking the entire brief, with no oral argument. Okay. Well, Ms. Hill, you've certainly made your point. I think we understand it. We will now hear from Ms. Jones, representing the State Louisiana Board of Nursing. Good morning, Your Honors. May it please the court, my name is Carrie Jones, on behalf of the appellee of the Louisiana State Board of Nursing. I'm joined here today by my co-counsel, Ms. Catherine Dufresne. Ms. Jones, when you filed your brief in support of your Rule 12b1 jurisdictional motion, did you discuss both sovereign immunity under the 11th Amendment rule for antitrust? We did go into the Parker Action Immunity. I would like to state from the beginning that sovereign action immunity under the 11th Amendment and Parker State Action Immunity are separate and distinct immunities. Yes, ma'am. But I wanna know, you did discuss both of them fully for the district court. Yes, Your Honor. We briefed both. We briefed the 12b1 motion to dismiss for subject matter jurisdiction, claiming 11th Amendment immunity. Also, in our motion to dismiss, we had a 12b6 that went into Parker Action Immunity, and we made... You got a copy of the brief that the appellants filed, right? Yes. And did it raise these issues as well? It responded to your... I guess you filed the initial motion to dismiss, you filed the first brief, correct? Correct. And they responded to your brief, and that's the one we were discussing that was late. It was dismissed, is that correct? That is correct. And you got a copy of it. And did they, in that brief, respond to both the state action immunity as well as sovereign immunity under the 11th Amendment? Well, what they did in their opposition to our motion to dismiss is very likened to what they did in that briefing before this court. They fused 11th Amendment immunity with state action immunity, and intermingled the factors and the prongs and the test, rather than apply the two types of immunity separate. It seems to me the argument here, at least in the briefing on appeal, they're talking about the right case law, it seems to me, for state action immunity, and say that that is the sole relevant immunity. It seems like that point was fairly made in their briefing. Do not address what Judge Brady did, and this is a question, do they address at all in the briefing on appeal what Judge Brady did on sovereign immunity and what he may have improperly done in weighing the six factors? No, I don't think they properly address that. I think... Not properly. Do they address that at all? Do they challenge the way Judge Brady analyzed sovereign immunity? Well, not in their motion for reconsideration, no. Kiki Borsa. No, in their briefing here, showing error in what the district court did, I'm speaking too strong, excuse me, but in their briefing here, I thought he was talking to me about speaking louder. I hear you. On appeal, do they challenge the evaluation of the six components, elements of sovereign immunity, such as to show where Judge Brady may have erred, if that's the right analysis? No, it's my position that they did not challenge Judge Brady's analysis of the six factors. Rather, they challenged that Judge Brady didn't apply the second prong of the Mid-Cal test in his analysis, which is not applicable to the 11th Amendment immunity. So, going back to my position that they've kind of fused the two and you filed your brief on the 12B6 motion to dismiss, you, I believe you did say that you raised both sovereign immunity and state action immunity? Yes, in our 12B6, we did address the Parker versus Brown. Why did you do that? I mean, did they allege state action immunity in their complaint? They did allege in their complaint, their original complaint, that the antitrust violation, and they had a North Carolina Dental Board case in their complaint to the court. And so we addressed the Parker v. Brown state action immunity. And in law school, you learn, you assert all your defenses so you don't lose them. So... Alright, did the district court specifically address, I think this has been asked and I'm not quite sure what the answer was, but did the district court specifically address Parker immunity? No, the district court did not address Parker and we think that was... And that was in their complaint. Correct, but we think that it was very proper that our 12B1 motion to dismiss based on lack of subject matter jurisdiction was the 11th Amendment challenge. And when the court was the best set of jurisdiction, they couldn't move on to the next step. And once that they found that the nursing board was a norm of the state, it wasn't appropriate for the court to move on to Parker v. Brown state action immunity. Was your motion to dismiss alternatively pled? Yes, sir. Okay. And then, well, I'm seeing, looking at his opinion at page four, footnote one, where he talks about state action immunity and he says, this court finds that these immunity defenses, 11th Amendment state action, are distinct in that a state or agency may be entitled to 11th Amendment immunity, yet not entitled to state action immunity and vice versa. Additionally, the court has researched the issue extensively and has found no clear statement that Congress has abrogated 11th Amendment immunity for liability under antitrust acts. Therefore, under the circumstances presented in this case, the court finds that Louisiana may invoke the protection of 11th Amendment immunity in a suit brought under the antitrust acts. So he did deal with it. Yes, he talked about the antitrust, but he didn't do his analysis under Parker v. Brown. He didn't apply the Midcalf factors, I believe, because once he found that there was 11th Amendment immunity, they're not mutually exclusive, they're separate and distinct immunities. And once he found it under the 11th Amendment, he didn't move on with the analysis of Midcalf. From your point of view, how late was the brief that was struck? Four days late. Four days? Four days late. It seems like a pretty rigid application of the rule. And talking about the late brief, the court under federal rules of procedure, Rule 16, has the ability to with respect to the scheduling order... It seems to me that one of the things that was said by opposing counsel is that your brief had to be refiled, conformed in some way. That took an extra three days. So what... Is it doing the math? Is this... Was it filed 10 days after that, plus one more day? Was it... And using your conformed brief filing as the starting date, was it only one day late? Judge Stopwick, I'm so glad that you don't say that. Our motion to dismiss was not filed late. On the same day, we filed two pleadings with the court. We filed a motion to dismiss, which is that issue today. We also filed an opposition to the injunction TRO issue. That opposition exceeded the page limit by one page because our signature block and certificate of service fell on the excess page. And the clerk's office said that they deemed our brief on the 12B1, and we were... Had to file a motion to strike and file that brief with the lower court. That was the injunction. Our motion to dismiss on 12B1 was timely filed. It wasn't deemed insufficient. It was filed within the court's timeline. So my opposing counsel's representation to the court, based on the record and the briefing, is inaccurate. Our brief was filed. It was not required to be resubmitted, and their brief was filed late in accordance with the court's scheduling order. But also, the excess pages. How many excess pages? Were there 10? Yes, they doubled... They exceeded the page limit by 10 pages, which the court had asked us to... I think they gave us a 10 page limit, and their brief was 20 pages. Let me ask you about the actual immunities here. What is your best case to tell us that these are independent immunities and antitrust action? Recently, we affirmed in North Carolina Dental Examiners that state action immunity is not the right immunity to look at? I think the case that best supports our position is Earls versus the CPA board that was decided here in the Fifth Circuit. The nursing board is most likened to the CPA board. If you look at the factors to consider an immunity, I think the nursing board falls right in line with Earls. The first factor that the court looks at is whether state statutes and case law characterize the agency as an arm of the state. Both the Louisiana legislator and Louisiana courts have viewed the nursing board as an arm of the state. We've briefed that extensively. The degree of local autonomy that the entity enjoys, the Louisiana State Board of Nursing is statutorily created. The Louisiana legislator has provided all the powers and authorities that the nursing board has, including to regulate nursing and nursing education. So all of the actions that are complained of in this case were authorized by the legislator. You seem to be going through some factors. Maybe this is answering my question. Let me try to rephrase it. I'm trying to say what is the best precedent, best case law, best authority, whatever you want to give me, that says these are, that basically confirms the footnote that Judge Barksdale read a little while ago from Judge Brady's opinion, that confirms that these are separate doctrines, that there's no error in Judge Brady using one, even though this is the kind of action that state action immunity applies to. Again, I think that... If that's what you're answering, was that what you're answering? Well, I won't go into the factors. I'll say that... Yeah, I don't want the factors. I want to know what case law tells me these are independent doctrines. Earls versus the Louisiana CPA board. And in that case, it's interesting because the Fifth Circuit has to address 11th Amendment and Parker action immunity. Because in addition to the CPA board being listed as a defendant in that lawsuit, the individual board members were listed as well. And so in Earls, the CPA board, the entity, was dismissed under 11th Amendment immunity. The board members were dismissed under the Parker action immunity because Ex Parte Young didn't allow the court to release the board members through 11th Amendment. So Earls went through an analysis of both 11th Amendment immunity, dismissed the board, and then they went through the analysis of Parker v. Brown and dismissed the individual board members. Thank you. In addition to Earls, there are several cases that support the analysis that liking the Louisiana State Board of Nursing. The Fireman's Fund case, all cited in our briefs, the Newerth versus the Dental Board, Boyson's Oyster Bar, and Dorlek versus Beauvair. It's our position that all these cases analyze state entities under the six-factor analysis that the court has historically used and that supports our position that we're entitled to 11th Amendment immunity. I just want to re-urge that the 11th Amendment immunity and state action immunity are separate and distinct and they have an independent analysis. They're not mutually exclusive and that when the lower court finds that it should not continue their analysis with State versus Brown. Moving into appellate allegations that the court abused its discretion in striking the brief and not allowing the motion for reconsideration, it should be noted that federal courts have an inherent power to manage their own and the appellate did not cite any manifest errors of law or fact or present any newly discovered evidence in their motion for reconsideration. We feel that that was properly granted and that the court did have discretion under Rule 16 to strike the brief from the record. Found it interesting the court in upholding on reconsideration striking the brief said it had done its own independent research to try to present the plaintiff's position. Yes, we thought that was interesting that the court had noted that and I think goes towards an argument that the plaintiff wasn't prejudiced because you know the court did do independent research and went as far as saying that they tried to formulate their argument in response to our motion to dismiss. So I feel like you know we not only did we beat the plaintiff's argument but we beat the court in making an argument for the plaintiff and succeeding on our motion. Of course, plaintiffs have a right to choose their own counsel. Yes, they do. Maybe they wouldn't have chose the district court, district judge as capable as he is. I don't think that was a question. I don't disagree with the statement though. This is the first occasion for a U.S. Court of Appeal to clarify the 11th Amendment immunity after the North Carolina Dental Board case. I think that there are a lot of state agencies and regulatory boards throughout the country whether it's medical boards, dental boards, cosmetology boards, plumbing boards that are interested in how the court is going to rule and apply 11th Amendment immunity in an antitrust case. With that being said, I know that the question may be close but I think when the court analysis considers that the nursing board has a broad grant of power from the legislator that we are composed of members who are appointed and we serve at the pleasure of the governor and we're charged with carrying out an important governmental function to promote, protect, and preserve the public's health and safety, you will find that the factors are in favor of 11th Amendment immunity and ask that you uphold the lower court's decision. I also want to take just a minute to distinguish the North Carolina Dental Board case. Well, Dr. Dunn, let me ask this before you move to the next one. I think you said earlier that on appeal the plaintiffs don't give us any argument addressing the six factors that the district judge applied, correct? Correct. So that issue is really not before us. I think... There's no argument of error as to that. The only argument of error, put this in the form of a question, is the only argument of error that the district judge applied the wrong standard. I think that it's hard to figure out what the error that they're alleging are because throughout the briefs, both to the lower court and their opposition to our motion, and in the briefs to the circuit court of appeal... Court for self-review. In all the briefs, both in the lower court and before the court of appeal, they mingle the factors. And specifically in the repliability, the appellate argues that the lower court erred in not applying the second prong of the Mid-Cal test. Well, the court didn't apply the first prong of the Mid-Cal test. So I feel that their issue to the court is that Mid-Cal and Parker were not applied by the lower court. Does that conclude your argument? Yes, if you have no further questions. Well, I thought you wanted to distinguish the Dental Board case for us. I will be happy to distinguish the Dental Board case. The 11th Amendment immunity was not before the US Supreme Court in the Dental Board case. That is an administrative case that was brought by the FTC. The 11th Amendment immunity protects states from suits against citizens of the states. So the Dental Board couldn't urge 11th Amendment immunity because of the plaintiff and that cause of action. Also, I think that the Dental Board should be distinguished because it involved the Dental Board regulating non-dentists from practicing the teeth whitening service. And the court determined that that was not within their designated authority, that teeth whitening was not the practice of dentistry and they couldn't prevent non-dentists from engaging in that activity. Whereas, you know, the Nursing Board does have the authority to regulate both nursing practice and nursing education. And the Nursing Board's decision to terminate Grambling's program did not prevent a group of people from participating in the market in the same sense that the Dental Board case did. Okay, thank you very much, Ms. Jones. Mr. Healy, you have some time for rebuttal. Thank you. I'll make this comment and it goes back to note 10 of the Earl's opinion, where the court specifically states it's fortunate for the board that only one prong of the Mid-Cal test applied to them. So at that particular point in time, they were treated as if they were municipalities and there was no question about whether or not they could get cozy and try to impact the market. That's in the footnote and the term is fortunate for them that they were only subject to the first prong because the second prong would have been the active supervision prong and that's the prong that's clearly stated in North Carolina Dental that for these particular entities that are regulating market areas that they're actively involved in, not only are they charged with following the charge that's been given to them by the state, but the state has to actively supervise them. So I would say that you could probably infer by the language that the court used in Earl that they are fortunate that they were not subject to the second prong. As a matter of fact, it actually goes into conversations about the fact that their activities were unsupervised. I think that this is what is the bottom of my position is, is that what the Supreme Court has said in Med-Cal, what has been highlighted in North Carolina Dental is that when you place individuals who are serving at the pleasure of the governor, doctors, lawyers, pharmacists over areas that they are regulating, they are subject to antitrust liability if they fail to meet the two prongs. So I think that the law is clear and I think that the Earl court got it right because the other individuals and other agencies, the non-Dillen boards and et cetera, they're not serving at pleasure. They're employees of the state. They're getting paid. There's no question. So is there a distinction? Yes, there's a distinction. These entities operating in that field that they're regulating, they're subject to this two prong test. And as the individual on the brief, I got to make this comment. The brief was four days late. It was in response actually to the issue associated with the 12B response. The general rule is 21 days to respond to something like that. Now, in my mind, former state district judge in Texas, I just couldn't figure that I had a 20 page document with about 412B allegations. I responded in the 10 day timeframe that was associated with the restraining order. I'll be honest with you. I just assumed that it's nowhere in the world that you could truncate a 21 day period that's normally provided to respond to a document of this nature to 10 days. And I responded to it in 14 days based on the fact that I understood the urgency of the fact that, hey, look, I want to get it all there. But I'll be honest with you. I never really believed that that order was talking about 10 days response, 10 days restriction on the page limit actually applied to the response to the 12B motion. Because at that point in time, we was trying to secure a restraining order in that case. We were still- Well, but because of the urgency of the restraining order decision, the court needed to address the jurisdictional question. I accept that now, Your Honor. I really can. But I just didn't want this court to leave you without it. What was going on there? It was four days late. But the pleadings in this case, Your Honor, is clear. North Carolina Dental is pled and alleged as the foundation of this case. And it's predicated on the theory that this board was subject to the two-prong test. And our objection to the district court ruling was that they did not utilize the two-prong test that's required for entities that fall into the category of being non-solid entities. OK, Mr. Huey. Thank you very much for your argument. That concludes the arguments that we have on the oral argument calendar for today. It concludes the work of this panel. So this panel stands adjourned.